Quinn, J.
(dissenting). The difference of opinion which troubles determination of this appeal, boils down to a construction of so much of section 66 of the rent regulations as says, “ [If] the dwelling unit was vacant on such date [May 31, 1968] and no rent was then being charged, the owner shall use the first rent charged subsequent to said date.”
There is no doubt the dwelling unit in the case under review was vacant on May 31, 1968. The only question is, was rent then being charged within the meaning of the statute? Not as a past phenomena, but as a present, on-going reality? Did the landlord have the existing, continuing, prospective right to demand and receive a consideration qua rent from an occupant in possession qua tenant on that critical date of May 31, 1968?
To charge a consideration qua rent, there must be a relationship of landlord and tenant (Gasoff Realty Corp. v. Berger, 188 Misc. 622 [App. Term, 1st Dept., 1957] ; Deickler v. Abrams, 159 N. Y. S. 2d 449, affd. 4 A D 2d 779) ; a relationship whereby the landlord affirms the tenant’s superior right of possession; for it is only out of that continuing right of possession in the tenant, that the rent issues (Quinn and Phillips, Law of Landlord and Tenant, 38 Fordham L. Rev., 225, 228-230). It is upon *236 that continuing right of possession in the tenant that the landlord’s right to charge rent, i.e., his existing, continuing, prospective right to demand and receive a consideration, called rent, rests.
On May 31,1968 there was no tenant with a right of possession in the subject premises from whom the landlord had an existing right to demand and receive a quid pro quo qua rent. The former tenant’s right of possession had been extinguished by the execution of a warrant on May 23, 1968 (Beal Property Actions and Proceedings Law, § 749, subd. 3) and the landlord had a judgment for damages which it had had a right to charge, i.e., to demand and receive, as rent on April 1 and May 1, because the tenant’s continuing right of possession was in full bloom on each of those dates and those were the dates, fixed in the lease, for payment on demand.
After May 23, 1968, the landlord, in addition to its judgment for damages, may have had an existing, continuing, prospective right to further damages from the former tenant, now out of possession, for breach of the lease; to be recovered in a subsequent action or actions, in a sum or sums equivalent to the amount fixed as the former rent under the lease. But after May 23, 1968 the landlord neither demanded, nor received, nor had any right to demand or receive any quid pro quo from-the former tenant, now out of possession, i.e., to charge him any consideration qua rent, as that term of legal art has been continuously interpreted, construed, used and understood in any and all its ancient common-law, or more recent, statutory connotations.
There can be no doubt that after May 23, 1968 the landlord had the right to let, or deliver possession of the subject apartment by oral or written lease, to anyone it chose, for whatever rent it could get. So that between May 23 and May 31, 1968, had the landlord found the present tenant or someone equally willing and suitable, the landlord could have concluded the same lease it subsequently did (with defendant) the following August, at the very rent it now seeks to use as a base. Thus the landlord would have had an existing, continuing, prospective right to demand and receive on May 31, 1968 the same amount of rent as the amount of the first rent subsequently fixed between these parties, by agreement. The only reason the landlord was not in a position to charge a rent on May 31, 1968 the same as the first rent subsequently fixed by agreement, or any other rent, was because it could not find a new, willing, suitable tenant between May 23 and May 31, 1968; not because it Avas charging *237 the old tenant the old rent; all of which points up the critical, central fact that on May 31,1968, no rent was then being charged.
The judgment in favor of the respondent-petitioner should he affirmed.
Gold, J. P., and Markowitz, J., concur in Per Curiam opinion; Quinn, J., dissents in memorandum.
Judgment reversed, etc.